Argued and submitted February 7, affirmed April 17, petition for reconsideration filed May 29, allowed by opinion September 11, 2013
See 258 Or App 532, ___ P3d ___ (2013)

In the Matter of E. L. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. H.,
*Appellant.*

Marion County Circuit Court
J110073;
Petition Number 020311HAR1;
A152286

301 P3d 427

Julia A. Philbrook, Judge pro tempore.

Kimberlee Petrie Volm, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

Mother appeals from a judgment that established a durable guardianship over her child, E, ORS 419B.366.[1] She assigns error to the juvenile court's denial of her request for an evidentiary hearing on the motion by the Department of Human Services (DHS) to establish the guardianship, and the court's entry of judgment establishing the guardianship. In particular, mother contends that the trial court's denial of her request for a "full evidentiary hearing" excused DHS from carrying its burden to establish the statutory standards for guardianship under ORS 419B.366(5), prevented her from presenting a defense, and violated her due process rights. In her second assignment of error, mother generally challenges the court's judgment establishing a guardianship, asserting that the only evidence in the record regarding the court's determination that E could not be returned to mother within a reasonable time was an affidavit by DHS's counsel. We reject mother's first assignment of error, concluding that the court held a legally sufficient hearing under ORS 419B.366. We also reject mother's second assignment of error because the court did not rely solely on the affidavit of DHS's counsel.

The relevant facts are few and undisputed. E was born in 1999 and was 13 years old at the time that the guardianship was established. In March 2011, the juvenile court took jurisdiction over E because mother's mental health endangered E's welfare. E was placed with her maternal grandmother. The court held a permanency hearing in February and March 2012, after which it entered a permanency judgment changing the permanency plan from reunification to guardianship.[2] The permanency judgment included the court's determination that the plan should be changed from reunification because, notwithstanding reasonable reunification efforts by DHS, E could not be safely returned to mother's care at the time of the hearing and evidence did not support a determination that further efforts

---

[1] Although the Juvenile Code does not use the term "durable guardianship" we use that term to distinguish the type of guardianship contemplated by ORS 419B.366 from permanent guardianships, ORS 419B.365, and guardianship as incident of custody, ORS 419B.370.

[2] We affirmed the court's change in permanency plan on mother's appeal from the permanency judgment.

by DHS would make it possible for E to return home safely within a reasonable time.

In July 2012, DHS filed a motion to establish a guardianship under ORS 419B.366, and attached an affidavit of DHS's counsel that averred that the statutory standards for establishing a guardianship were satisfied in this case.[3] Mother filed an objection to the motion and requested that "a hearing be set on my objection and as a permanency hearing. Estimated time is six hours."

The juvenile court held a hearing on July 19, 2012, at which DHS argued that the court should grant the motion to establish a guardianship. Mother orally requested an "evidentiary hearing to be set both on the objection to the State's motion to establish guardianship and also to be set as a permanency hearing to request that the plan be changed back to return to parent."[4] At the July 19 hearing, counsel for DHS and E both explained that the court had held a permanency hearing in February and March at which the court had heard evidence regarding mother's progress and DHS's reasonable efforts to reunify the family.[5] DHS argued that mother had not provided any basis for objecting to DHS's motion to establish a guardianship, and without any evidence that mother's situation had changed since the entry of the permanency judgment, the court should grant the guardianship motion. Mother responded that the court

---

[3] ORS 419B.366(5) provides:

"If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes."

[4] Although mother requested an evidentiary hearing "both on the objection to the State's motion to establish guardianship" and "as a permanency hearing," mother has contested the court's ruling only as it pertains to the hearing request on the guardianship motion.

[5] Judge Philbrook presided over the July 19 hearing, and Judge Broyles had presided over the earlier permanency hearing.

was required, under ORS 419B.366(5), to hold an evidentiary hearing at which mother could put on evidence to counter DHS's assertion that that guardianship was appropriate, particularly on the issue of whether E could be returned to mother within a reasonable time.

The court determined that, given the amount of time allotted to the July 19 hearing (15 minutes), the court could not hold a full evidentiary hearing that day, even if one was warranted, to allow mother to present evidence in response to DHS's motion. The court noted that it appeared that mother, in also requesting another permanency hearing, was asking for reconsideration of the permanency judgment entered after the February/March permanency hearing, which was on appeal. The court allowed DHS to conduct a colloquy with the proposed guardian (the maternal grandmother) about her suitability and willingness to serve as guardian. Mother declined an opportunity to cross-examine grandmother on that issue. The court then instructed mother to submit a written offer of proof containing the substance of mother's evidence regarding whether E could be returned to her within a reasonable time. The court indicated that it could make the offer of proof "part of the record without taking up the [c]ourt's hearing time right now while I have other matters pressing." The court further indicated that it would review the offer of proof and then determine whether an additional evidentiary hearing would be appropriate.

Mother submitted an offer of proof in the form of an affidavit that outlined mother's continued employment stability, participation in services, and housing stability since the permanency hearing. Mother stated that she had maintained the same job since January 2012 and had completed coping skill classes with a holistic nurse. In addition, mother explained that she had continued to work with a counselor on self-care and coping skills and had begun taking Zoloft to help stabilize her "emotions and anxiety" and improve her "sleep and coping skills." Finally, mother noted that she was expecting to receive a housing voucher from the Salem Housing Authority, which would allow her to upgrade her housing. In response, DHS offered an affidavit from its counsel that countered the validity of some of the assertions in mother's offer of proof.

Subsequently, the court issued an order that, in part, denied the "request for a full evidentiary hearing" on mother's objection to guardianship. In that order, the court explained that it had considered "the case history, the court record of the contested permanency proceedings in February and March 2012," mother's objection to guardianship and offer of proof, DHS's affidavits, and the representations of E's attorney regarding E's desire for immediate implementation of the guardianship. Based on that information, the court concluded:

> "The proferred Offer of Proof reiterates the position of the mother at the contested hearing in February and March, 2012 and elaborates on improvements the mother continues to make. The fact that the mother continues to make improvements was considered by the court at the contested permanency hearing. In March the Court found that the child could not safely be returned to the parent within a reasonable period of time, adoption is not an appropriate plan, there is a suitable and willing guardian and that it was not in [E's] best interest to return to her mother. The Court recognized and cited the mother's self-improvement in maintain[ing] employment and participation in counseling. The mother appealed the court's ruling. That appeal is currently pending in the Oregon Court of Appeals. The mother now offers that she continues to improve and that she has obtained a housing voucher to use in August 2012. There has been no compelling change persuading this Court to grant a full evidentiary hearing, predicted to take six hours, on the mother's objection to guardianship.

> "The child is thirteen years old and reportedly mature, articulate and aware of her mother's current self-improvement efforts. The child has been seeking permanency since the inception of the case on February 2nd, 2011, She has continued to live with the proposed guardian, the child's maternal grandmother since February 2011. The current placement with the proposed guardian provides the safe, stable, structured and nurturing environment that the child desires and deserves. It is not in the best interest of the child to delay the implementation of the guardianship plan. The child currently desires to proceed with guardianship under ORS 419B.366."

Subsequently, the court entered a judgment establishing the guardianship. Mother appeals from that judgment.

On appeal, mother assigns error to the court's denial of her request for an evidentiary hearing and the court's decision to establish a guardianship under ORS 419B.366. She contends that ORS 419B.366 requires a hearing at which DHS must prove, by a preponderance of the evidence, the requirements under ORS 419B.366(5) to establish a guardianship. She asserts that by denying her request for an "evidentiary hearing," the court prevented her from presenting evidence that E could be returned to her within a reasonable time and thereby excused DHS from carrying its burden on that issue. Mother argues that the court essentially adopted DHS's argument that she was precluded from "presenting evidence, or even arguing" that E could be returned to her care within a reasonable time because the court had determined at the permanency hearing that she had not made sufficient progress toward ameliorating the jurisdictional bases and that the permanency plan of guardianship was in E's best interests. She asserts that, because ORS 419B.366 requires an independent proceeding at which the court must evaluate the statutory requirements in ORS 419B.366(5), reversal is required.

Mother also claims that, as a constitutional matter, the court's denial of her request for an "evidentiary hearing" violated her right to a fundamentally fair proceeding under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. She maintains that the court's ruling prevented her from presenting a defense to the imposition of a guardianship, which, in turn, prevented her from having a meaningful opportunity to be heard.

DHS counters that the July 19 hearing satisfied the statutory requirements of ORS 419B.366.[6] According to DHS, the court held a "hearing" as required by ORS 419B.366, at which it received evidence from DHS. After the hearing, the court considered evidence from the hearing, mother's post-hearing "offer of proof," and evidence from the permanency hearing record, and concluded that DHS had met its burden under ORS 419B.366(5) to demonstrate that a guardianship

---

[6] DHS also asserts that the court acted within its discretion to the extent that it ruled that mother was not entitled to a permanency hearing. Because mother has not raised the denial of a permanency hearing as an issue in this appeal, we need not address that issue.

was proper. DHS maintains that the court acted within its discretion to conclude, based on mother's offer of proof, that there was no reason to hold a further "full evidentiary hearing."

DHS further asserts that the court's ruling in this case was acceptable: mother made an offer of proof of what her evidence would be at a full evidentiary hearing, and the juvenile court found that that evidence would not affect its conclusion as to the findings required by ORS 419B.366(5); therefore, there was no basis for the court to hold a full evidentiary hearing. As such, DHS disputes mother's contention that she was precluded from presenting evidence that E could return to mother within a reasonable time. Finally, as for mother's constitutional argument, DHS simply contends that, between the permanency hearing and the July 19 hearing, mother received a fundamentally fair proceeding.

We begin our analysis with an overview of the statutory scheme. The juvenile court may grant a motion for guardianship only after the court has approved a permanency plan of guardianship under ORS 419B.476. ORS 419B.366(5). To change a permanency plan from reunification to guardianship, the court must determine at the permanency hearing that DHS has made reasonable efforts to make it possible for the ward to safely return home and that the parent has not made sufficient progress to make possible the ward's safe return. ORS 419B.476(2)(a). In making those determinations, the court "shall consider the ward's health and safety the paramount concerns." *Id.* Within 20 days of the permanency hearing, the court must enter an order that includes the court's determinations under ORS 419B.476(2)(a) and, among other things, "[i]f the court determines that the permanency plan for the ward should be establishment of a legal guardianship * * *, the court's determination of why neither placement with parents nor adoption is appropriate[.]" ORS 419B.476(5)(e).

Notably, before changing the permanency plan, the court is not required to make a finding as to whether a parent can be reunited with the child within a reasonable time. *Dept. of Human Services v. D. L. H.*, 251 Or App 787,

805, 284 P3d 1233, *modified on recons*, 253 Or App 600, 292 P3d 565 (2012) ("[T]here is no statutory requirement under ORS 419B.476 or any other authority that requires the juvenile court to find that a parent cannot be reunited with the child within a reasonable time before the court changes the plan from reunification to adoption."); *cf. Dept. of Human Services v. A. D.*, 255 Or App 567, 579, 300 P3d 185 (2013) (noting that a "reasonable time" determination at the permanency stage is relevant to "the question of whether there is a compelling reason to refrain from filing a petition for termination of parental rights immediately"). Nevertheless, the court may determine at that stage that "further efforts will make it possible for the ward to safely return home within a reasonable time" and, if it does, the court shall "order that the parents participate in specific services for a specific period of time and make specific progress within that period of time[.]" ORS 419B.476(4)(c).

If the juvenile court changes the plan to guardianship, ORS 419B.366 governs the procedure and requirements for establishing a durable guardianship. It provides:

"(1) A party * * * may file a motion to establish a guardianship. The motion must be in writing and state with particularity the factual and legal grounds for the motion.

"(2) Except as otherwise provided in subsection (3) of this section, the facts supporting any finding made or relief granted under this section must be established by a preponderance of the evidence.

"(3) [Outlining procedure if an Indian child is involved].

"(4) In a proceeding under this section, the court may receive testimony and reports as provided in ORS 419B.325.

"(5) If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes.

"(6) Unless vacated pursuant to ORS 419B.368, a guardianship established under this section continues as long as the ward is subject to the court's jurisdiction as provided in ORS 419B.328."

As such, the hearing requirement in ORS 419B.366 is linked to the determinations that the court must make before it may grant a motion for guardianship. The facts underlying those determinations, in turn, must be established by a preponderance of the evidence. Put another way, the court may grant the motion, after a hearing, only if a preponderance of the evidence establishes that the ward cannot safely return to a parent within a reasonable time, adoption is not appropriate, the proposed guardian is willing and suitable and, considering the ward's wishes, guardianship is in the ward's best interests. ORS 419B.366(2), (5).

Notably, the determinations required of the court under ORS 419B.366(5) are generally different from the determinations required at, or after, a permanency hearing. The court considers the ward's best interests and whether adoption is appropriate at both stages, but determinations regarding whether the ward can return to a parent within a reasonable time and the suitability and willingness of the guardian are not required by statute to be made at the permanency hearing. Accordingly, to the extent that DHS asserts that the permanency hearing prior to July 19 somehow satisfied DHS's burden of proof under ORS 419B.366, that is incorrect. The statutory scheme is clear that a hearing required by ORS 419B.366 is independent from a permanency hearing and requires different determinations.[7]

---

[7] That is not to say that the record from the permanency hearing is not relevant to the court's determinations at a guardianship hearing. Further, we do not decide whether, in certain circumstances, it is permissible to hold a "joint" permanency and guardianship hearing.

However, to the extent that mother contends that the court failed to hold a hearing under ORS 419B.366, we disagree. The July 19 hearing was held to address DHS's motion for guardianship. Accordingly, the question presented by mother's first assignment of error is not whether a hearing was held, but whether the hearing was legally sufficient under ORS 419B.366. Mother argues that the court had no discretion to deny her a proceeding at which she could "litigate" her progress toward reunification with E by calling or cross-examining witnesses, and generally presenting a defense to the allegations that supported DHS's motion. DHS responds that the court had some discretion to limit the scope of the hearing, and that it permissibly exercised that discretion in this case by taking evidence on some of the statutory requirements, and providing mother an opportunity to present evidence, in the form of an offer of proof, on whether E could be returned to mother within a reasonable time. Ultimately, we agree with DHS that the hearing in this case was legally sufficient.

ORS 419B.366 does not explicitly require any specific type of hearing. However, it is apparent, given the overall context of ORS 419B.366, that a party contesting the guardianship motion must be given an opportunity to contest the allegations put forth in the motion to establish a guardianship; otherwise, the hearing requirement would be illusory. ORS 419.366, however, does not require that the hearing be conducted in any specific manner. *Compare* ORS 419B.476(1) (dictating that a permanency hearing shall be conducted in the manner provided in ORS 418.312, ORS 419B.310, ORS 419B.812 to 419B.839 and ORS 419B.908); *see also* ORS 419B.185 (outlining the evidentiary hearing that must be held before a child may be taken into protective custody). The legislative history of ORS 419B.366 does not provide additional guidance on the manner in which a guardianship hearing must be conducted. *See* Or Laws 2003, ch 229, §§ 1-10.

However, as the Supreme Court recently clarified, "the due process rights of parents are always implicated in the construction and application of the provisions of ORS chapter 419B." *Dept. of Human Services v. J. R. F.*, 351 Or

570, 579, 273 P3d 87 (2012). Accordingly, due process considerations also provide some context to the hearing requirement in ORS 419B.366. Due process in this context requires a "fundamentally fair" proceeding, which includes "the opportunity to be heard at a meaningful time and in a meaningful manner." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990) (noting that fundamentally fair proceedings are required by due process when parental rights are terminated).

In total, therefore, it is clear that under ORS 419B.366 a hearing must be held at which the party contesting the guardianship motion must have an opportunity to present evidence to contest the allegations and evidence supporting the establishment of a guardianship. Although the legislature has not indicated any specific manner in which the evidence must be received, the proceeding as a whole must be "fundamentally fair." *See Geist*, 310 Or at 189-90. That is, the party contesting the guardianship must be given the opportunity to be heard at a meaningful time and in a meaningful manner. *Id*.

In view of those standards, we reject mother's argument that the July 19 hearing was insufficient as a matter of law. The court in this case held a hearing at which it took evidence regarding the establishment of a guardianship and gave mother the opportunity to present evidence, albeit at a future date, to counter the establishment of a guardianship. The July 19 hearing, therefore, was not insufficient as a matter of law. To the extent that mother is dissatisfied with the manner in which the court conducted the July 19 hearing, we reject mother's contention that the juvenile court had no discretion as to the manner in which the hearing was conducted under ORS 419B.366. The proper question is whether, in total, mother was provided with a fundamentally fair proceeding, given that the court had some discretion in how the hearing was conducted. *See State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000) (trial courts have broad discretion to control proceedings before them).

DHS submitted a motion for guardianship supported by evidence and the proposed guardian's testimony. Mother

indicated at the July 19 hearing that she intended to challenge DHS's allegation that E could not be returned to mother in a reasonable time by introducing evidence of mother's continued progress since the February permanency hearing—at which the court made a finding that E could not be returned to mother within a reasonable time. The court directed mother to submit her evidence, in the form of an offer of proof, to the court. The court took judicial notice of the permanency hearing record, considered mother's new evidence in conjunction with that record, and concluded that further evidentiary proceedings were not necessary because the evidence of mother's continued improvement in the intervening four months would not change the court's determination that E could not be returned within a reasonable time. Accordingly, mother was given an opportunity, through the offer of proof, to submit evidence supporting her objection to guardianship to the court. We conclude that, at least in the narrow circumstances presented here—where the permanency hearing and guardianship hearing were held within a four-month time span and the court made a finding regarding "reasonable time" in the permanency judgment—the court did not violate due process by limiting mother's submission of evidence to an offer of proof, and then deciding based on that evidence that further evidentiary hearings were unnecessary.

In sum, we conclude that the court proceedings in this case provided mother with a fundamentally fair proceeding, at which she was given the opportunity to be heard at a meaningful time and in a meaningful manner. Despite mother's protestations to the contrary, she was ultimately given a hearing at which she was afforded the opportunity to cross-examine DHS's only witness, and after which she was allowed to submit evidence on the only issue that she indicated to the court that she intended to contest—*viz.,* whether E could be returned to mother within a reasonable time.

Finally we briefly address mother's contention that the court erred by entering a judgment of guardianship that was not supported by evidence in the record. Mother, while assigning error to the entry of judgment, generally protested that she did not have an opportunity to present a

defense because of the court's ruling denying her a further hearing, but does not specifically challenge any of the court's determinations under ORS 419B.366(5). Instead, she contends that the only evidence in the record that supported DHS's contention that E could not be returned to mother within a reasonable time was DHS's motion for guardianship and the affidavit of DHS's counsel that accompanied it. She argues that the affidavit was not "evidence" upon which the court could rely on in making its determinations under ORS 419B.366(5).

We conclude that the court relied upon more than the affidavit of DHS's counsel to make its determination as to "reasonable time." The court took judicial notice of the permanency hearing record and considered mother's offer of proof, ultimately determining that the court was aware of, and had considered, mother's improvements at the permanency hearing, but that her continued improvement did not alter the conclusion that E could not be returned to her within a reasonable time. Accordingly we reject mother's contention that the only evidence in the record to support the court's determination on "reasonable time" was the affidavit of DHS's counsel.

Affirmed.